Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God said the United States in his honorable court. Good morning. Good morning, Your Honor. I only see one judge. Should I only see one judge? No, you should see all three of us, but you may need to put on the gallery view. Do what? You may need to do the gallery view. Click the gallery view on your Zoom. Share screen is what I have here. Mr. O'Brien? Yes. Upper right corner of your Zoom meeting, you should see a view. Yes. Can you click that view, sir? I see. Oh, I see. Okay. I have everybody. Thank you. Okay. Thank you, Mr. O'Brien. We're only hearing two appeals this morning. Counsel, we're familiar with your cases and we've read your briefs, the authority cited in your briefs and at least portions of the record. We probably have some questions for you this morning. Be mindful of the clock. You can see the clock. When your time expires, it's time to wrap it up. If you're answering a question from the court, you can finish your answer, but please do be mindful of our time this morning. And if you have to finish an answer from the court, you won't lose any rebuttal time should that be something that you have saved. Our first case is United States v. Castaneda. Mr. O'Brien? Hey, police and court. Mr. Quinn, I'm Dennis O'Brien. I represent Mr. Castaneda. Whoever causes a child who believe in me to sin, it would be better for him to have a great millstone fastened around his neck and to be drowned in the depth of the sea. Even in the Gospel of Matthew, we find disdain for a person who would harm a child. Nobody likes a person who attempts to abuse a child. If you ask the average person what an appropriate sentence for Castaneda would be, they probably would have told you he should have been tortured, disemboweled, and hanged. Other prisoners, even disdained pedophiles, they're routinely harassed and often killed in confinement. Even the First Step Act, which is designed to modernize and temper the federal criminal justice system, expressly excludes people like Castaneda. They are the pariahs of our society. They have no support. No one dare take up their cause. Despite their universal disdain, the one place Castaneda should have been treated fairly was in court in front of a fair and reasonable judge, not unduly persuaded by the impassioned pleas of prosecutors. Regrettably, that did not happen in this case. Here's what happened. On April 3rd, 2015... Is this an argument about the sentence or is this an argument about the suppression issue? I'm having a hard time understanding. It's an argument about not allowing Dr. Herriot to testify, excluding the expert witness. That's essentially where I'm focusing today. Okay. Okay. On April 3rd, 2015, the FBI placed an ad in the personal section of Craigslist. The ad was entitled, Taboo Mom Looking for Like-Minded Teacher. Counsel, we're up with the facts of the case. Okay. They're not really all that disputed. If you would, just get to your argument. Okay. I will, Your Honor. The courts... Okay. Castaneda testified in this case. He stated that his communication and interaction with the agents was collaborative storytelling, specifically sexual fantasy role play. He claimed there was never any real intent to actually seduce a child. He claimed it was harmless conduct that he and others had engaged in in internet chat rooms. Counsel, regarding the expert's testimony, which is what you say you'd like to focus on, and that's good for me too. The expert seemed to testify or seemed to proffer that he had no independent or anything to say regarding the facts of this case. He said that he had reviewed some of the information in the case, but he had nothing to say or no opinion to give regarding this case. Why is it not within the discretion of the court to then say, we don't need that sort of testimony because this expert has nothing to add to the facts of this particular case? Well, interestingly, Your Honor, here's where I come down on that. Actually, Dr. Harriot stated in his report that he had been asked to review the discovery in this case. And in fact, he had reviewed the discovery. And the reason that we need Mr. Castaneda needed a witness like Dr. Harriot was the conversations that Castaneda had with the agent in this case were played to the jury. And on his face, what it sounds like is a guy trying to set up a liaison, a sexual liaison with a 12-year-old child, when in fact, Castaneda's defense was that's not what it was. To the average juror listening to what Castaneda said in his communication with the agent, it sounds like he's just trying to set up a meeting with the child. But in fact, that's not, according to Castaneda and his lawyer, that's not what he was doing. And it's not the kind of thing that the average juror would be aware of. In fact, let me point out, Your Honor, in a conversation with the court, Mr. Byrne was his trial lawyer. The judge asked that question. The trial judge asked that question. And this is Mr. Byrne. Your Honor, I would say that probably nobody in this courtroom has read Dr. Harry's report or has any experience in computer-mediated communication, especially as it relates to sexually-related conduct or sexually-related communication. Counsel, on page three of the very report that you're talking about, Dr. Harry had said, quote, that he would offer, quote, no analysis or recommendation regarding the specifics of this case. I'm sorry, Your Honor. Is that true? Did he say that? Yes, he did say that in his report. Based on that, and that's the information that the trial court had, how can we say that the trial court abuses discretion in finding that his testimony or what he would give would not be helpful or assist the jurors in this particular case? Sorry, as opposed to a case counsel where Dr. Harriet is able to give an opinion regarding the facts of a particular case? Well, actually, Your Honor, Dr. Harriet was aware of the discovery in this case, and his role would have been... That's not the question. Absolutely. You know, we heard you before when you said, and we were already aware that Dr. Harriet had looked at the discovery. Right. But the fact of the matter is, bringing it back to Judge Luck's point, is that he did not say he was going to offer any testimony about this defendant and what this defendant was doing and what the facts of this case were. And so, Judge Luck's question is, how can we say that is an abuse of discretion to exclude that testimony, which is not tied to the facts of this case? Your Honor, actually, the trial judge refused to allow Dr. Harriet to testify because she believed that his testimony would not be relevant. Right. Well, it's not tied to the facts of this case. That sounds right. Well, here's how I think it is tied to the facts of the case, Your Honor. Again, I think this is not a phenomenon. This computer-generated communication is not a phenomenon that a jury is familiar with. In fact, that's what Mr. Burr... Counsel, jury's familiar with the fact that some people lie, is it not? That's correct. And you think the juror said, people lie, but they don't lie on the internet? Everything on the internet's true? No, I don't think that's the point, Your Honor. People lie. People lie on the internet. People go on the internet, they go in chat rooms. But I don't think the average juror, the average person, is familiar with the phenomenon that Dr. Harriet was prepared to involve in. I mean, this is probably... What is there to be familiar with? He said, I was lying. That's the way I get my kicks, role-playing. Correct. Why do you need an expert to say, yeah, some people lie and some people role-play on the internet, some people role-play in real life. They do it on the phone. That's the basis of a lot of fraud schemes. But the jury needs to be told. That's correct, Your Honor. But I think the jury is not aware of what Mr. Castaneda contended he was doing, that he wasn't back role-play. Counsel, how do we square that with Gillis, where in the course of giving many reasons for why the testimony should be excluded there, we specifically said, quote, his being Dr. Harriet's primary conclusion, i.e. that not all communications on the internet are truthful, was within the knowledge of laypersons. How does that not go directly to Judge Carnes' question that the fact that people make stories up or role-play is as true on the internet as it's true in life, as it's true of anything else, is within the common knowledge of anyone else and therefore would not assist the jury? It seems to me that Mr. Castaneda, the specifics of his testimony is precisely what Dr. Harriet would have testified to, that this is a phenomenon. It's recognized in his whatever circle he travels in. And, you know, I think it would have assisted the jury in understanding that, okay, people do these kinds of things. This is a recognized phenomenon. And then it's up to the jury, Your Honor, to decide whether in fact they believed him or not. They may have thought that's just a bunch of baloney. He's just making that up. You know, without Dr. Harriet's testimony, that's the tendency that I would think a jury would have after they hear what his recorded conversations were with the agent. Then he comes into court and says, well, I was just role-playing. They're thinking, well, that's a bunch of baloney. I never heard anything like that. Dr. Harriet's testimony would explain to the jury that, no, this really is a phenomenon that people do. They actually engage in role-play. And, Your Honor, to take it a step further, I think the trial judge refused to let him testify because, as the trial judge said, well, he wasn't pertinent to this case. He didn't basically say that that's what he was doing. I see that as a violation of Rule 704, that had he said that, he would basically be saying that was a state of mind that Castaneda had. And that would be impermissible. I don't think we could go that far. But I think that's what the trial judge excused Dr. Harriet's testimony on, that he didn't opine that, in fact, that was Mr. So your client's position was that he not only role-played on the internet, but he was role-playing when he spent all that money for a plane ticket to fly all the way to Atlanta. No, Your Honor. Essentially, what he said was, that's the second part of his defense. His first defense was he was role-playing. And then what his testimony was, was that, you know, the agents were using a live person, a live cooperating defendant. He had found out information about the cooperating defendant, who actually had been involved in abusing a child. There are videos of it on her website. Castaneda's testimony was, once having found that, he actually arranged a trip to Atlanta to come and investigate this. And if, in fact, it was true, he was going to turn her over to the police. How was he going to investigate it, counsel? I was going to meet with the person and find out what the deal was, I suppose. Maybe look at some of her child pornography? He did. He said he did look at it. That's why he came to Atlanta. I mean, in Atlanta? No, he was in California, Your Honor. And then came to Atlanta. I know, but he flew to Atlanta. He did. According to his defense of flying to Atlanta. The purpose, according to Mr. Castaneda's testimony, was he flew to Atlanta to save the child from any further abuse by the person he was talking to. So he thought... And he didn't want to call the police in Atlanta to save the child through law enforcement. There's testimony about that. He testified he couldn't get in touch with the, you know, the local police agency. But his testimony was... Counsel, how is the jury expected to assess that testimony, that he was on some sort of secret investigation to uncover a child, a pornography ring, but is not capable of assessing the testimony that he was in some sort of role playing relationship with this woman on the internet? Pretty far-fetched defense from what I could see. But the reality is, you know, I think he's entitled to present a full defense. This was his defense, Your Honor. Thank you, Counsel. Okay, you've saved a few minutes for rebuttal. Let's hear from Mr. Quinn. Judge Pryor, and may it please the court. Michael Quinn for the United States. Of the five issues raised in Mr. Castaneda's opening brief, all of them are consigned to the sound discretion of the district court. On each question, the court reached a logical, sensible, and legally sound conclusion. The only one he's addressed this morning is the Harriet testimony. Yes, Your Honor. Unless the panel has questions or anything else, I'll confine my argument to the expert testimony issue. The district court properly excluded Dr. Harriet's proffered testimony because it would not have helped the jury understand the evidence or determine a fact in issue. Dr. Harriet's own report said that he was not going to offer any opinion about this case, and the court took him at his word and said that the only thing he was going to provide is background information on what he termed computer-mediated communications, or CMC. Based on this, the court determined that, consistent with this court's holding in Gillis, the idea that people sometimes lie on the internet is within the knowledge of the lay jurors, and having an expert come and testify in addition to that would not be helpful to the jury. Gillis ultimately ruled on reliability grounds, not on relevancy grounds, correct, counsel? I don't agree with that, Your Honor. I think Gillis ruled on both grounds. The district court considered reliability and relevance in its decision, and the five infirmities... The district court here or the district court in Gillis? Because I thought the district court in Gillis ruled specifically on reliability grounds. No, Your Honor. I think the district court in Gillis ruled on both, and I think this court affirmed on both. And the reason is because on page 1194 of the opinion, this court identified five infirmities in Dr. Gillis' proffer testimony under which it said it had no trouble affirming the exclusion. And the fifth of those infirmities is the topic we just discussed, that his proffer testimony would have been within the knowledge of the lay person. And I think that goes to relevance. Whereas the first four infirmities, that his research was not published, that his study was not randomized, that he was unable to identify specific academic literature, and that he didn't demonstrate sufficient experience in online sexual communication studies. Those go toward reliability. But the fifth one... You agree that two other circuits have gone the other way, at least with regard to whether this testimony is helpful for the lay person, correct? No, Your Honor. I don't agree that the Second Circuit's decision in Joseph was a hoax. There, the panel had already decided to grant a new trial on the jury instruction issue. And the opinion... And told the court, hey, court on remand, you need to do this, right? Your Honor, Second Circuit precedent is not binding here. And so if we look at the instructive value, we should take into account all of it. And one thing that makes that decision less instructive is, yes, that statement was made that the court should perhaps look at the issue again, but it was not a holding. That's dicta. And dicta is entitled less weight. Furthermore, that was a divided opinion. There was a strong dissent where the third judge said, I don't think the district court did anything wrong here. I think it was well within its discretion to exclude Dr. Harriot's testimony. And I object to this instruction by the panel majority. What about the D.C. Circuit? Your Honor, I'm not familiar with that case. Can you... In height? If you're not familiar, then don't worry about it. I'm not familiar. I'm sorry. Thank you. Okay. And of course, I would again say what the binding decision here is going to be guiltless regardless of what the Second Circuit and D.C. Circuit have said. If the panel has no other questions, the United States asks that you affirm the conviction and sentence of Mr. Castaneda. Thank you, Mr. Quinn. Mr. O'Brien, you've saved three minutes for rebuttal. Thank you, Your Honor. I just wanted to also point out, these are the advisory notes on the advisory committee on proposed changes under Rule 702. And it tells, this is what it says, an intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge. Most common source of this knowledge is the expert witness, although there are other techniques for supplying it. And this is the question that I think the court has asked. Whether the situation is the proper one for the use of an expert testimony is to be determined on the basis of assisting the trier of fact. There's no more certain test for determining when experts may be used than the common sense inquiry, whether the untrained layman would be qualified to determine intelligently. Okay. Tell us how you would distinguish this from guiltless. It just seems to me that Castaneda is fact specific, that his testimony, you know, his statements. Dr. Herring would have testified about fantasy and role playing in online sexual communications and guilt, right? Correct, Your Honor. Which is what he would have testified to here as well, right? That's correct, Your Honor. What, how do you distinguish guiltless? I guess just factual distinction, Your Honor. What factual distinction? That Castaneda's testimony was different than what he was. How? Well, his testimony at trial was that he was only role play. That's precisely what Dr. Herring would have testified to in guiltless. Well, it just seemed to me that it would have been testimony that would have been helpful to the jury. I also want to point out, Your Honor, that as Daubert even says, as the court in Daubert stated, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Therefore, guiltless was wrong, according to you. Well, I mean, you can't distinguish that, can you, Mr. O'Brien? I'm trying, Your Honor. I know. Try as you can, we're bound by guiltless. Yes, I understand, Your Honor. It would, Dr. Herring's testimony would have been subject to thorough cross-examination. The government could have presented contrary evidence and final analysis. The judge always tells the jury, you can accept this testimony or you can reject all of it. I think in this particular case, he touched all the bases on Daubert and Cuomo-Tyre, and he should have been permitted to testify. Okay. Thank you, Jim. I think we understand your case. Mr. O'Brien, you're court-appointed, and we appreciate you accepting the appointment and assisting us this morning. Thank you, Your Honor. It was an honor.